# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY, ) ) ) Plaintiff, ) ) v. ) ) CENTURY SURETY COMPANY, ) ) ) Defendant. ) | NO. 3:15-cv-00681 JUDGE CRENSHAW |

## MEMORANDUM OPINION

Columbia Casualty Company ("Columbia") initiated this action against Century Surety Company ("Century"), alleging multiple state law causes of action. (Doc. No. 1.) Century has a counterclaim, alleging a state law cause of action against Columbia. (Doc. No. 22 at 23.) The Court has jurisdiction over this case because there is complete diversity of the parties and the amount of controversy is over seventy-five thousand dollars. 28 U.S.C. § 1332(a) (2006). Before the Court are both companies' motions for summary judgment. (Docs. No. 37, 40.) For the following reasons, both motions for summary judgment (Docs. No. 37, 41) are **GRANTED IN PART and DENIED IN PART**.

  I.   UNDISPUTED FACTS AND PROCEDURAL HISTORY

Tritex Real Estate Advisors, Inc. and/or Trimont Real Estate Advisors, Inc. (collectively "Trimont") owned the Clairmont Apartments in Nashville, Tennessee, in October 2010. (Doc. No. 1); Escobar v. Gaines, No. 3:11-cv-00994, ECF No. 1, at 1 (M.D. Tenn. Oct. 19, 2011), admitted in ECF No. 85 at 1 (Jan. 5, 2012). Greystar Real Estate Partners, LLC, and Greystar Management Services, LP (collectively "Greystar"), managed the Clairmont Apartments. Trimont and Greystar

entered into a "Multi-Family Residential Property Management and Leasing Agreement" ("Management Agreement"). (Doc. No. 49 at 3.) Under the Management Agreement, Trimont and Greystar were both required to have each other named as additional insured on their commercial general liability policies. (Doc. No. 47 at 14.) The Management Agreement further provided that the Manager's Insurance shall be written as the "primary [policy], not contributing with, and not in excess of, any insurance coverage that Owner . . . may carry against same hazards . . . ." (Doc. No. 41 at 11.)

Columbia issued and delivered a policy to Greystar in South Carolina (the "Columbia Policy"). (Doc. No. 49 at 1.) Century issued and delivered a policy to Trimont in Georgia (the "Century Policy"). (Id.) Trimont and Greystar were listed as "other insureds" on each other's policy. (Doc. No. 39-1; Doc. No. 39-2.) The policies are nearly identical in their material terms related to coverage of the insureds. (Id. at 2.) Neither policy contains a choice-of-law provision. (Id.) There is no contractual relationship between Century and Columbia. (Id. at 3.)

Each policy has an "Other Insurance" provision that discusses the priority of insurance coverages in the event multiple insurance policies cover the same event.[1] The Columbia Policy states that it "is primary except when Paragraph b. below applies." (Doc. No. 39-2 at 20.) In pertinent part, the Columbia Policy also states that it is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." (Id.) The Century Policy states that it "is excess over any other

---

[1] Columbia also refers to a Blanket Additional Insured Endorsement, which states that the additional insured on the Columbia Policy is covered, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule . . . ." (Doc. No. 39-2 at 54.) This Endorsement appears to apply in this case because Trimont would be covered with respect to liability arising out of Greystar's maintenance or use of the Clairmont Apartments. For this reason, the Court focuses on the "other insured" provisions in the analysis, rather than on this Endorsement.

2

insurance . . . unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part." (Doc. No. 39-1 at 42.)

On October 19, 2011, residents and former-residents of the Clairmont Apartments sued multiple defendants, including Trimont and Greystar, asserting numerous causes of action. (Doc. No. 47 at 16); Escobar, No. 3:11-cv-994, ECF No. 1 (M.D. Tenn. Oct. 19, 2011) (the "Escobar Lawsuit"). The claims against Trimont and Greystar include claims for: conspiracy to violate the Fourth and Fourteenth Amendments; conspiracy to violate the Fourth and Fifth Amendments; conspiracy to deprive the plaintiffs of their equal protection rights; and a violation of the Equal Protection Clause of the Fourteenth Amendments. Escobar Complaint.

Upon the filing of the Escobar Lawsuit, Trimont and Greystar requested that Century provide them with a defense. (Doc. No. 47 at 18.) Neither Greystar nor Trimont advised Century that they had another insurance policy that potentially provided coverage for the Escobar Lawsuit. (Doc. No. 42-1 at 2.) Additionally, neither Greystar nor Trimont disclosed the Escobar Lawsuit to Columbia. (Doc. No. 49 at 5.) On November 29, 2011, Century agreed to defend Greystar and Trimont, but advised them that it reserved its rights to contest coverage of liability regarding certain claims. (Doc. No. 47 at 21.) Particularly, it stated that it would not cover any liability arising from the "large scale warrant-less raid in which Plaintiffs claim Tritex [and] Greystar . . . participated." (Doc. No. 22-4 at 6.) It further reserved denying coverage for claims that Tritex and Greystar "participated in entering apartments and detaining, searching, and seizing based solely on race and ethnicity, and that [Tritex and Greystar] were intentionally, knowingly, and willfully motivated by discrimination." (Id.) Century also denied coverage for any punitive damages. (Id.)

However, it may cover claims that Tritex and Greystar "participated in unlawfully entering Plaintiffs' apartments resulting in warrant-less detainment, search, seizure, and arrest." (Id.)

Approximately one week before a scheduled mediation in the Escobar Lawsuit, Greystar disclosed the existence of the Columbia Policy to Century. (Doc. No. 47 at 20.) Greystar also notified Columbia of the Escobar Lawsuit in an email dated July 17, 2014. (Doc. No. 49 at 5.) On November 14, 2014, Century demanded that Columbia defend the insureds in the Escobar Lawsuit. (Doc. No. 49 at 5.) Century had incurred defense costs in the Escobar Lawsuit of $437,269.90, including forty-four thousand dollars after Greystar notified Columbia of the lawsuit. (Doc. No. 47 at 23; Doc. No. 49 at 6.) Columbia settled the Escobar Lawsuit for nine hundred thousand dollars, with Columbia paying six hundred thousand dollars, and Trimont and Greystar paying one hundred fifty thousand dollars each. (Id.) Century refused to contribute to the settlement of the Escobar lawsuit. (Id. at 6.)

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however, will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

   III.   ANALYSIS

Columbia requests: (1) declaratory relief to define the rights and obligations of the parties regarding the settlement of the Escobar litigation and attorneys' fees incurred during the Escobar litigation; (2) equitable contribution from Century; (3) equitable subrogation against Century; and (4) equitable indemnity against Century. (Doc. No. 1.) Century's counterclaim asks for reimbursement of the cost it incurred to defend the Escobar Lawsuit. (Doc. No. 22 at 23.)

In analyzing each claim, the Court must first determine which state's law applies to each claim. It will then determine each parties' respective rights and obligations under the insurance contract when the Escobar Lawsuit was filed. Last, it will determine whether either party is entitled to indemnification for the costs it already incurred.

   A. CHOICE OF LAW

First, the Court must determine which state's law applies to each claim. Both parties agree that South Carolina law controls the coverage obligations of Columbia to its insured and Georgia law controls Century's coverage obligations to its insureds. (Doc. No. 48 at 2.) Century argues that Tennessee law controls the dispute between the two insurance companies. (Doc. No. 41 at 13.) However, it includes a footnote stating that Georgia, Tennessee, and South Carolina provide "identical rules of decision on nearly all relevant issues." (Id.) Columbia analyzes the claims under

5

South Carolina law and argues that Tennessee law does not apply, but does not give any reasons why South Carolina law would apply to the dispute between Columbia and Century. (Docs. No. 38, 46, 50.)

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In Tennessee, the first step in deciding which state's law to apply is to determine whether there is a material difference in the laws of the relevant states. Lemons v. Cloer, 206 S.W.3d 60, 65 (Tenn. Ct. App. 2006) (citing Hataway v. McKinley, 830 S.W.2d 53, 55 (Tenn. 1992). As discussed below, there is no actual conflict on the relevant issues in this case between the laws of Tennessee, South Carolina, and Georgia. Therefore, the Court does not have to determine which state's law applies.

B. RIGHTS AND OBLIGATIONS

The first question in determining the rights and obligations of the parties under their respective insurance contracts at the time of the Escobar Lawsuit is to determine whether both policies were primary insurance policies, or if the Columbia policy was the primary policy and the Century policy was an excess policy. Columbia admits in its Statement of Material Facts that its policy is primary in its coverage of Greystar, and only argues that Century's policy is also primary in its coverage of Trimont. (Doc. No. 49 at 2; Doc. No. 38 at 13.) Century argues that its policy was excess to Columbia's policy in its coverage of both insureds. (Doc. No. 49 at 2.)

The question of whether Century's policy is a primary or excess policy is an interpretation question of Century's policy, which means the Court must apply Georgia law. See Powell v. Clark, 487 S.W.3d 528 (Tenn. Ct. App. 2015) (applying contract interpretation principles to an "other insured" provision of a car insurance contract). In Georgia, "insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their

6

usual and common signification and customary meaning." Northland Ins. Co. v. Am. Home Assur. Co., 689 S.E.2d 87, 90 (Ga. Ct. App. 2009) (quoting Turner v. Gateway Ins. Co., 660 S.E.2d 484 (2008)). Therefore, the Northland Insurance court interpreted an "Other Insurance" provision by its ordinary meaning without looking at outside sources. Id.

Under its ordinary meaning, Century's insurance policy is excess to Columbia's. It states that it is "excess over any other insurance . . . unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part." (Doc. No. 39-1 at 42.) Columbia's policy is not "written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part," so the Century Policy must apply in excess to the Columbia Policy.

Columbia's argument that its "excess insurance" clause makes it excess because Greystar has been added as an additional insured to another policy is not persuasive in light of the clear meaning of its contract. Its contract is interpreted by South Carolina law. South Carolina looks to the plain language of the insurance contract to determine the meaning of the contract. South Carolina Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Group, 578 S.E.2d 8, 11 (S.C. 2003). In fact, the two contracts in Farm Bureau had the exact same language as the two contracts at issue in this case, and the South Carolina Supreme Court found that the language identical to the language in the Columbia Policy made it primary, while the language identical to the in the Century Policy made it secondary. Id. at 9-11. This case can be distinguished from Farm Bureau because there was no evidence in Farm Bureau that the insured was named as an additional insured to another policy. However, the Columbia Policy is only excess if there is any "other *primary* insurance available to you . . . for which you have been added as an additional

7

insured by attachment of an endorsement." (Doc. No. 39-2 at 20 (emphasis added)). The Century Policy is excess, so there is not another primary insurance available to the insureds. Therefore, the Columbia Policy is the primary policy, and the Century Policy is the excess policy.

The Court acknowledges that if it reads Columbia's policy first, rather than Century's, it is possible to come to come to the opposite conclusion. In that case, it is tempting to find that both policies have competing "other insurance" clauses and hold that they are repugnant. However, the "cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Whitlock v. Stewart Title Guar. Co., 732 S.E.2d 626, 628 (S.C. 2012) (quoting McGill v. Moore, 381 S.C. 179, 185 (2009)). The Court must "enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." Id. (quoting USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 979 (2008)). In this case, the default rule of the Columbia policy is that it is primary and the default rule of the Century Policy is that it is excess. This is supported by the Management Agreement, which required Greystar to carry primary insurance for both insureds, which Greystar accomplished through the Columbia Policy. The only way the Century Policy is primary is if the Columbia Policy was "explicitly" written to be in excess of the Century Policy. Because the Columbia Policy can be read either as primary or excess, it is not "explicitly" written to be in excess of the Century Policy. Under the plan language of both contracts, the Century Policy was written in excess of the Columbia Policy in its coverage of both insureds.

As the Columbia Policy is primary and there are no other primary insurances that cover Trimont or Greystar, Columbia's "obligations are not affected . . . ." (Doc. No. 39-2 at 20.) Because the Columbia Policy has a liability limit of one million dollars, the six hundred thousand dollar settlement is well within the policy limitations, and Columbia was required to pay it, subject to

8

any reservation of rights.[2] (Id.) Additionally, Columbia had "the right and duty to defend the insured against any 'suit' seeking" the damages under the Escobar Lawsuit. (Doc. No. 39-2 at 9.) The attorneys' fees must be "necessary litigation expenses incurred by the indemnitee at [Columbia's] request . . . ." (Id. at 17.) The parties agree that Century's litigation expenses were reasonable and necessary. (Doc. No. 47 at 23.) However, Columbia requires its insureds to contact it "immediately" when they are sued. (Doc. No. 39-2 at 19.) Any amount that its insureds pay before contacting Columba are "at that insured's own cost . . . ." (Id.) Thus, Columbia did not have a duty to defend Trimont or Greystar until the insureds notified it. If the insureds had contacted Columbia at the beginning of the litigation, Columbia would have been obligated to pay the entire amount of the attorneys' fees.

C. CAUSES OF ACTION

All of Columbia's causes of action are premised on the Court finding that both insurance policies are primary. (See Docs. No. 38, 46, 50.) Therefore, the Court grants summary judgment to Century on Columbia's equitable contribution, equitable subrogation, and equitable indemnity claims. In order for the Court to grant any equitable relief to Columbia, they must have some right to the relief. As the Columbia Policy is primary, it has no right to be reimbursed for the six hundred thousand dollars it paid toward the settlement because it had a duty to pay that amount under its policy. The remaining question is whether Century is entitled to relief on its reimbursement claim.

Century is not entitled to reimbursement of any fees until Greystar notified Columbia of the litigation because Columbia was not required to defend Trimont or Greystar's litigation until notified. Under Century's policy, it does not have a duty to defend Trimont and Greystar against a suit "if any other insurer has a duty to defend the insured against that 'suit.'" (Doc. No. 39-1 at

---

[2] Only Century argues that the Reservation of Rights limits its obligations regarding liability.

42.) The Century Policy further provides that if "no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (Id.) In this case, Century only has its insureds' rights against Columbia. Trimont and Greystar have no rights against Columbia because they never notified Columbia about the suit, making any costs they pay at their own expense. (Doc. No. 39-2 at 20.) Therefore, Century has no right of reimbursement against Columbia for any defense costs prior to notifying Columbia of the underlying litigation.

There still remains the question of whether Century is entitled to reimbursement of the forty-four thousand dollars of attorneys' fees Greystar incurred after it notified Columbia about the Escobar lawsuit. (Doc. No. 49 at 6.) "Where one insurer is primary and another is excess, the former is responsible for all the costs incurred in providing their common insured a defense." United Services Auto. Ass'n v. Continental Ins. Co., 1985 WL 4692, at *7 (Tenn. Ct. App. Dec. 24, 1985) (quoting Federated Mutual Insurance Co. v. Pennsylvania National Mutual Insurance Co., 480 F. Supp. 599, 600 (E.D. Tenn. 1979)) (applying Tennessee law because there was no Arkansas substantive law). "[W]here there is an excess insurer and a primary insurer, the primary insurer has the sole responsibility for a loss within its policy limits as well as for the costs of the defense unless the policy provides for some division of certain costs." Id. In United Services, like the present case, the Tennessee court, applying Tennessee law, allowed for the excess insurer to be reimbursed by the primary insurer for the defense costs of a civil suit.[3] Id. The same law applies in Georgia, Commercial Union Ins. Co. v. Insurance Co. of North America, 273 S.E.2d 24, 28 (Ga. App. 1980), and South Carolina, Cincinnati Ins. Co. v. Crossmann Communities of North Carolina, Inc., No. 4-09-1379-RBH, 2013 WL 1283381, at *4 (D.S.C. Mar. 27, 2013) (distinguishing Sloan Construction Co., Inc. v. Central National Ins. Co. of Omaha, 236 S.E.2d

---

[3] In United Services, the insured contacted both the primary and excess insurers and the primary insurer denied coverage, which is why the excess insurer paid for the defense costs of the civil suit. Id. at *1.

818 (S.C. 1977)). The Court therefore finds that the excess insurer has a right to be reimbursed by the primary insurer when the primary insurer had a duty to defend the insured.

In this case, it is undisputed that Century incurred forty-four thousand dollars in defense fees after Greystar notified Columbia of the Escobar Lawsuit. Under Tennessee, Georgia, and South Carolina law, Century has a right as a matter of law to be reimbursed for those fees because it was the excess insurer and Columbia was the primary insurer. Therefore, the Court grants summary judgment to Century for those fees.

IV. CONCLUSION

For the foregoing reasons, Columbia's motion for summary judgment (Doc. No. 37) is **GRANTED IN PART** with regard to reimbursement of defense fees prior to being notified and **DENIED IN PART** in all other respects. Century's motion for summary judgment (Doc. No. 41) is **GRANTED IN PART** with regard to Columbia's claims and its claim for reimbursement of defense fees after notifying Columbia of the Escobar Lawsuit, and **DENIED IN PART** in all other respects.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE